**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| **FREDERICO GONZALEZ ID # 31225-177,** ) | |
| **Movant,** ) | |
| vs.                                                          ) | No. 3:11-CV-0634-G-BH |
| ) | No. 3:03-CR-0329-G (13) |
| **UNITED STATES OF AMERICA,** ) | |
| **Respondent.** ) | Referred to U.S. Magistrate Judge |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Pursuant to the provisions of 28 U.S.C. § 636(b) and an Order of the Court, this action has been referred for findings, conclusions, and recommendation. Based on the relevant filings, evidence and applicable law, the motion to vacate should be **DENIED**.

**I.  BACKGROUND**

Federal inmate Frederico Gonzalez ("Movant") filed a *Motion to Vacate, Set Aside, or Correct Sentence* ("Mot.") under 28 U.S.C. § 2255 challenging his federal conviction and sentence in Case No. 3:03-CR-0329-G (13). The respondent is the United States of America ("Government").

**A.     Plea and Sentencing**

On November 5, 2003, movant and 14 other individuals were charged in a superseding indictment with a narcotics trafficking conspiracy in violation of 21 U.S.C. § 846 and a money laundering conspiracy in violation of 18 U.S.C. § 1956(h). (*See* doc. 122).[1]

On April 6, 2004, movant pled guilty without a plea agreement. In response to questioning during the rearraignment, he testified that he was forty-two years old, that he went to the eighth grade, that he had never been treated for mental illness, that he was currently taking fourteen pills a day for HIV, and that he had been taking these medications for seven or eight years. (doc. 796 at 2-4). Movant further testified that he could speak and understand English but did not know how to

---

[1] All document numbers refer to the docket number assigned in the underlying criminal action.

read. (*Id*. at 3-4). In response to questions about the voluntariness of his plea and the factual basis for it, he averred that (1) he had fully discussed the charges against him with his attorney; (2) he understood that he had a right to plead not guilty and have a jury trial with counsel representing him; (3) he understood that by pleading guilty, he was giving up his right to a jury trial, as well as the right to see and hear witnesses, cross-examine witnesses, decline to or choose to testify, and compel witnesses to testify in his defense; (4) he had discussed the sentencing guidelines with his attorney and understood that the applicable guideline could not be determined until after a pre-sentence Report (PSR) had been prepared; (5) no one had made any promises or predictions regarding any potential sentence; (6) he understood that the district judge had the authority in some circumstances to impose a sentence that was either more or less severe than the sentence called for by the sentencing guidelines; (7) he had no plea agreement with the government; (8) he could not withdraw his plea if the sentence he received was more severe than he expected; and (9) he understood that the statutory maximum sentence for Count 1 was life imprisonment and was twenty years for Count 2. (*Id.* at 6-15). Movant admitted each essential element of the charged offenses and stated that the factual resume had been read to him by his attorney, that he asked his attorney any questions that he had about it, and that he signed it because he understood and was satisfied with its contents. The district court then read the stipulated facts from the factual resume, and movant again verified that the facts were true and correct. (*Id*. at 16-17). Finding movant's guilty plea to be knowing and voluntary and that he was competent to plead, the district court accepted it and adjudged him guilty. (*Id.* at 5, 17).

After a sentencing hearing on August 11, 2004, the district court entered judgment on movant's guilty plea and sentenced him to life imprisonment on Count 1 and 240 months on Count 2, to be served concurrently. (*See* doc. 483). Movant appealed his convictions on the basis that the

district court violated Rule 11 of the Federal Rules of Criminal Procedure by rejecting his plea agreement without informing him that he could withdraw his plea. Movant also appealed his sentence on grounds that the district court had erred by treating the guidelines as mandatory. On August 7, 2008, the Fifth Circuit affirmed his convictions after finding that there was no plea agreement with the government because the government never accepted the terms of movant's counteroffer, but it reversed the sentences under *United States v. Booker*, 543 U.S. 220 (2005). *See United States v. Gonzalez*, 286 Fed. App'x 203 (5th Cir. Aug. 7, 2008).

On July 14, 2009, and July 21, 2009, the district court held new sentencing hearings and re-sentenced movant to life imprisonment on Count 1 and 240 months on Count 2. (*See* Amended Judgment, doc. 777). Movant again appealed his sentences, and the Fifth Circuit affirmed. *See United States v. Gonzalez*, 377 Fed. Appx. 371 (5th Cir. May 5, 2010).

**B.     Substantive Claims**

Movant filed his motion to vacate and supporting memorandum ("Mem.") on July 5, 2011. In his motion and memorandum, he asserts the following grounds for relief:

(1)     his trial attorneys provided ineffective assistance of counsel by:

-failing to object because he was not permitted to withdraw his guilty plea after the court rejected the plea agreement (Mem. at 19-21);

-failing to object to the government's failure to abide by the plea agreement (Mem. at 9-12);

-failing to advise movant that he was subject to a "mandatory" life sentence if he pled guilty (Mem. at 5-8);

-leading him to belief that only the 5 to 15 kilograms of cocaine stipulated in the factual resume would be considered (Mem. at 5);

-promising him that he would only receive between 10 and 15 years imprisonment if he pled guilty (Mem., Ex. F; Reply, Ex. A);

3

>-failing to challenge the enhancements to his sentence (Mem. at 24-25);
>
>-failing to challenge the evidence in the PSR concerning the drug quantity attributable to movant (Mem. at 8, 11, 13); and

(2) the district court erred by

>-failing to advise him that he could withdraw his guilty plea when the plea agreement was struck (Mem. at 15-16, 21-22-23); and
>
>-basing his sentence on conclusory statements contained in the PSR regarding attributable drug amounts (Mem. at 17-18).

Movant submitted a sworn affidavit in support of his motion. (Mem., Ex. F). The Government filed a response brief on May 31, 2011. (*See* Resp. Opp'n Mot. ("Resp.")). Movant filed a reply brief on July 5, 2011 and submitted a second sworn affidavit.

## C. Evidentiary Hearing

Movant's trial attorneys, movant, and his daughter testified at an evidentiary hearing held on November 29, 2011. Movant testified that while he completed the eighth grade, he did not read or write in 2003 and 2004, and that he has hearing loss and could not hear out of his right ear. Medical records explaining movant's hearing loss were admitted into evidence. Movant further testified that he was told by his attorneys, Cynthia Barbare and C. Tony Wright, that they could get him a 10-year sentence if he pled guilty, that no one told him that he could receive the maximum sentence of life imprisonment, and that he thought he could keep his ranch pursuant to a plea agreement. Movant also testified that he did not understand and could not hear what happened at the rearraignment hearing and only answered as instructed by counsel. He testified that although he told his attorneys he wanted to plead guilty, he would have gone to trial if he thought he could receive life imprisonment. His attorneys also did not tell him that he could be held responsible for more than 5 kilograms of cocaine. Movant's daughter testified that he is very hard of hearing, she

was present when he pled guilty, and she had concerns as to whether he could hear the proceeding. She further testified that she met with Barbare, who did not promise a particular sentence.

Barbare testified that she represented movant in 2003 and 2004, and that she had represented others accused of drug conspiracies. She believed that the government had a strong case against movant because of wiretaps and assistance from co-conspirators. She met with movant several times and read all relevant documents to him because she knew that he had difficulty reading. She also knew that he had a hearing problem but never believed that he could not hear her. Barbare brought Wright in as co-counsel in March of 2004 because her relationship with movant had become strained, he was becoming increasingly hard to deal with, and she had some health issues. Barbare explained to movant that he could either go to trial or plead guilty with or without a plea agreement. Movant did not want to go to trial. He knew that life imprisonment was a possibility if he pled guilty, but he was hoping for a downward departure in his sentence. However, he received an additional two levels for obstruction of justice due to his false testimony at a co-defendant's trial. With regard to the plea agreement offered by the government, movant did not want to agree to forfeit his ranch, so they struck out that portion of the written plea agreement. However, she told movant that he could not keep his ranch. She never promised movant that he would be sentenced based on only 5 kilograms of cocaine and could not have promised this because the PSR had not yet been drafted. Barbare was not present when movant pled guilty.

Wright testified that he was brought in as counsel to represent movant in the spring of 2004, and that he recalled meeting with movant 3 times. He considered the evidence against movant to be overwhelming. Wright went over several scenarios with movant, informing him that his base level would be 38 under the sentencing guidelines, and discussing with him possible adjustments to the level because of the presence of firearms and his role. He informed movant that if he was

5

lucky, he could receive thirty years, but movant did not want to testify against co-defendants. Wright never promised movant that he would receive between 10 and 20 years. Movant also wanted to strike certain items from the plea agreement, including the forfeiture of his ranch and the amount of kilograms involved. Because of this, there was no plea agreement. Movant always wanted to plead guilty, stating that he would not go to trial, although Wright told him that there would be a seizure of his assets. Movant told Wright once that he could not hear something during the plea hearing, and because Wright also had hearing problems, they laughed about it. Wright clarified what was said, however. Wright read all documents to movant. He believed that while movant did not like pleading guilty, he understood what he was doing.

## II.  SCOPE OF RELIEF AVAILABLE UNDER § 2255

"Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Gaudet*, 81 F.3d 585, 589 (5th Cir. 1996) (citations and internal quotation marks omitted). It is well established that "a collateral challenge may not do service for an appeal." *United States v. Shaid*, 937 F.2d 228, 231 (5th Cir. 1991) (*en banc*) (quoting *United States v. Frady*, 456 U.S. 152, 165 (1982)).

A failure to raise a claim on direct appeal may procedurally bar an individual from raising the claim on collateral review. *United States v. Willis*, 273 F.3d 592, 595 (5th Cir. 2001). Defendants may only collaterally attack their convictions on grounds of error omitted from their direct appeals upon showing "cause" for the omission and "actual prejudice" resulting from the asserted error. *Shaid*, 937 F.2d at 232. However, "there is no procedural default for failure to raise an ineffective-assistance claim on direct appeal" because "requiring a criminal defendant to bring [such] claims on direct appeal does not promote the[] objectives" of the procedural default doctrine,

6

"to conserve judicial resources and to respect the law's important interest in the finality of judgments." *Massaro v. United States*, 538 U.S. 500, 503-04 (2003). The Government may also waive the procedural bar defense. *Willis*, 273 F.3d at 597. In this case, the Government does not invoke procedural bar as a defense to any claim.

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

Movant claims his trial attorneys were ineffective in connection with his plea and sentencing.

The Sixth Amendment to the United States Constitution provides in pertinent part that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. art. VI. The Sixth Amendment guarantees a criminal defendant the effective assistance of counsel, both at trial and on appeal. *Strickland v. Washington*, 466 U.S. 668 (1984); *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). To successfully state a claim of ineffective assistance of counsel, the prisoner must demonstrate (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced his or her defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). The *Strickland* test applies when a prisoner alleges denial of effective assistance of counsel in the context of a guilty plea. *Hill v. Lockhart*, 474 U.S. 52, 57-58 (1985).

When a prisoner challenges his plea based on ineffective assistance of counsel, the "prejudice" requirement "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill*, 474 U.S. at 58. To satisfy this requirement in the plea context, the prisoner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* To show prejudice in the sentencing context, the movant must demonstrate that the alleged deficiency of counsel created a reasonable probability that his sentence would have been less harsh. *See Glover v. United States*, 531 U.S. 198, 200 (2001) (holding "that if an increased prison term did flow from an error


[of counsel] the petitioner has established *Strickland* prejudice"). One cannot satisfy the second prong of *Strickland* with mere speculation and conjecture. *Bradford v. Whitley*, 953 F.2d 1008, 1012 (5th Cir. 1992). Conclusory allegations are insufficient to obtain relief under § 2255. *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989); *United States v. Daniels*, 12 F. Supp. 2d 568, 575-76 (N.D. Tex. 1998); *see also Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (holding that "conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding").

**A.     Guilty Plea**

Movant contends that his trial attorneys were ineffective with regard to his guilty plea by (1) failing to object because he was not permitted to withdraw his guilty plea after the court rejected the plea agreement (Mem. at 19-21); (2) failing to object to the government's failure to abide by the plea agreement (Mem. at 9-12); (3) failing to advise movant that he was subject to a "mandatory" life sentence (Mem. at 5-8); (4) leading him to believe that only the 5 to 15 kilograms of cocaine stipulated in the factual resume would be considered (Mem. at 5); and (5) promising him that he would only receive between 10 and 15 years imprisonment (Mem., Ex. F; Reply, Ex. A).

The record reflects that movant did not have a plea agreement with the government. Movant signed a plea agreement offered by the government, but only after striking out the reference to the forfeiture of certain property and changing the parameters under which he would cooperate. (doc. 212). The government never agreed to these changes in the agreement, and movant acknowledged on the record at the rearraignment hearing that he was pleading guilty without a plea agreement. (doc. 796 at 14). Because there was no plea agreement, trial counsel was not ineffective for failing to object because movant was not permitted to withdraw his guilty plea or for failing to object because the government did not abide by the agreement. *See Sones v. Hargett*, 61 F.3d 410, 415 n.5

(5th Cir. 1995) ("Counsel cannot be deficient for failing to press a frivolous point.").

To the extent that movant is asserting that he did not understand that he was pleading guilty without a plea agreement because he could not hear what occurred at the hearing, the record from the hearing does not support this contention. To the contrary, it reflects that movant answered questions from the judge with specific, relevant answers, asked certain questions, and at one point asked the district judge to repeat himself when movant did not understand what was occurring. (doc. 796 at 14). Movant's testimony is insufficient to overcome the veracity of his prior sworn testimony at the rearraignment hearing that he understood that he was pleading guilty without a plea agreement. *See Bonvillain v. Blackburn*, 780 F.2d 1248, 1252 (5th Cir. 1986) (holding that court records are "accorded great weight").

Movant also asserts that his attorneys were ineffective for failing to advise him that he was subject to a "mandatory" life sentence, for leading him to belief that only the 5 to 15 kilograms of cocaine would be considered, and for promising him that he would only receive between 10 and 15 years. Movant appears to be referring to the determination in the PSR that his sentencing guideline level was 43, with a guideline sentence of life imprisonment. (PSR at 44). This guideline level was not mandatory; it was the result of levels added to the 38 base level because of firearms found at one of movant's properties with drugs and drug paraphernalia and post-plea obstruction of justice during a co-defendant's trial. At movant's re-sentencing, the district court determined that there was evidence to support a finding that movant obstructed justice and used firearms, and that the sentence range was therefore 360 months to life. The court then determined that no factors warranted sentencing outside of this recommended range. (PSR at 35-37; doc. 781 at 38-39; doc. 780 at 17-20). Movant's life sentence was not mandatory, and his attorneys were not ineffective for failing to advise him of a mandatory life sentence.

With regard to his claims that his attorneys were ineffective because they led him to believe that his sentence would be based only on the quantity of drugs admitted in the factual resume and for promising him that he would only receive between 10 and 15 years if he pled guilty, counsel denied these allegations. Both testified that they never promised him a particular sentence, that they told him that a PSR would first need to be prepared, and that they went over the sentencing guidelines with him and possible scenarios. Wright in particular testified that he told movant that if he was lucky, he could receive a thirty-year sentence if he pled guilty, and that movant did not want to go to trial. Based on the demeanor of the witnesses at the hearing, their respective roles, any apparent bias, consistencies in testimony, explanations for inconsistencies, and corroborating evidence, the Court finds that movant was never promised a particular sentence or assured that he would not be held responsible for additional drugs that were not seized when he was arrested. Furthermore, at the rearraignment hearing, movant stated that he understood the maximum possible sentences he could receive. (doc. 796 at 11). Counsel were not ineffective in their representation of movant with respect to his guilty plea.

**B.     Sentencing**

Movant further asserts that his attorney at re-sentencing, Larry Jarrett, was ineffective for failing to challenge the enhancements to his sentence (Mem. at 24-25), and for failing to challenge the evidence contained in the PSR concerning the drug quantity attributable to movant (Mem. at 8, 11, 13). The record from the hearing, however, reflects that counsel did object to both the enhancements and the amount of cocaine. Counsel also argued that movant was entitled to a downward departure in his sentence because he accepted responsibility by pleading guilty and because he is HIV positive. (doc. 780 at 3-6). Movant's re-sentencing claims are also without merit. Movant's ineffective assistance of counsel claims should all be denied.

## IV. TRIAL COURT ERRORS

Movant also contends that the district court erred in failing to advise him that he could withdraw his guilty plea after his plea agreement was rejected and erred in basing his sentence on conclusory statements contained in the PSR. Both of these claims have been raised and rejected on direct appeal. In its decision on movant's first direct appeal, the Fifth Circuit specifically held that the district court did not err in not advising movant that his guilty plea could be withdrawn after the plea agreement was struck because there was no plea agreement. *United States v. Gonzalez*, 286 Fed. Appx. 203 (5th Cir. Aug. 7, 2008).[2] During the rearraignment hearing, movant specifically acknowledged that he had no plea agreement with the government. (doc. 796 at 14). Accordingly, movant is entitled to no relief on this claim.

In its decision on movant's second direct appeal, the Fifth Circuit held that the district court found the sentencing factors by a preponderance of the evidence. In particular, the Fifth Circuit held that the firearms and drug paraphernalia found at one of movant's residences, along with testimony that he trafficked drugs from that location, supported the district court's determination that he possessed a firearm in connection with his offense. The Fifth Circuit further held that the testimony supported the determination that movant was responsible for 150 kilograms of cocaine. *United States v. Gonzalez*, 377 Fed. Appx. 371 (5th Cir. May 5, 2010). Therefore, movant's claim that the district court erred in determining his sentence has also already been addressed by the Fifth Circuit, and he is entitled to no relief. Movant's claims of trial court error should be denied.

---

[2] Rule 11(c)(5) of the Federal Rules of Criminal Procedure requires a court that rejects a plea agreement to advise a criminal defendant that he may withdraw his guilty plea. FED. R. CRIM. PROC. 11(c)(5)(B).

## V. RECOMMENDATION

The *Motion to Vacate, Set Aside, or Correct Sentence* pursuant to 28 U.S.C. § 2255 should be **DENIED** with prejudice.

**SIGNED this 20th day of January, 2012.**

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE